IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAMON DODD, SR., #362610 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. GLR-12-126 |
| BOBBY SHEARIN, Warden, et al. | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Damon Dodd, Sr., ("Dodd") filed the above-captioned Complaint pursuant to 42 U.S.C. § 1983. Defendants Bobby Shearin, Damon Thomas, and Mr. White, by their attorney have filed a Motion to Dismiss, or in the Alternative for Summary Judgment. ECF No. 18. Plaintiff has responded. ECF No. 24. After review of the pleadings and applicable law, the Court determines that a hearing is unwarranted. See Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the Motion to Dismiss, construed as a Motion for Summary Judgment, will be GRANTED.

### Background

Dodd, an inmate confined at the North Branch Correctional Institution ("NBCI"), alleges that false information concerning his membership in a prison gang is maintained in his prison file, to which he has been denied access. He also alleges that his assignment to administrative segregation at NBCI violated his right to due process. He claims that his non-legal mail has been tampered with and that he has been retaliated by prison staff. ECF Nos. 1 & 6.

Specifically, Plaintiff alleges that he entered NBCI on May 26, 2010, as a general population inmate. On September 13, 2011, he was placed on administrative segregation. ECF

No. 6.  On November 9, 2011, Plaintiff states that he filed an inmate request asking Security Chief Arnold to provide him a copy of the DOC's "Security Threat Group" ("SGT") policy. Defendant Thomas responded to that request on November 15, 2011, advising Plaintiff that the policy was restricted and only those authorized had access to the policy.  Id.

On November 9, 2011, Plaintiff filed an application and consent form for release of inmate case record information so that he "could challenge false information contained in the file."  Id.  Plaintiff states that on November 14, 2011, he also filed a request under the Maryland Public Information Act to receive his file.  Id.  On November 28, 2011, he wrote a grievance to the Inmate Grievance Office stating that he was denied access to his prison file which contained false information that Plaintiff sought to have expunged.  Plaintiff states he did not receive a response.

On December 4, 2011, Plaintiff requested a copy of DCD 110-35 pertaining to STG categorization.  NBCI's library responded to the request advising Plaintiff that the library did not carry DCD 110-35 because it was restricted by the Intelligence Coordinating Unit.  On December 20, 2011, Plaintiff filed a formal request to Defendant Shearin requesting expungement of erroneous unspecified information contained in his prison file.  He filed an ARP on January 5, 2012, asking to inspect his prison file in order to have false information expunged. Plaintiff also asserted, in a complaint filed with the IGO on January 10, 2012, that his placement on administrative segregation violated his right to due process.  Id.

Plaintiff states that on January 20, 2011, a letter addressed to Juli Peterson was confiscated by NBCI staff and turned over to Detective Faller of the Baltimore City Police Department.  Plaintiff states he was never notified and the letter did not contain any contraband or illegal materials.  On September 4, 2011 and September 26, 2011, Plaintiff mailed letters to

Brandy Smothers which were never received. Plaintiff believes that these letters were confiscated and never mailed out of the Institution. Plaintiff also alleges a grievance to the IGO and letters to his mother were never received by the addressees. He filed an ARP on February 9, 2012 concerning interference with his mail. He also alleges that his incoming mail has been interfered with. He states that he subscribes to Final Call Newspaper, Prison Legal News and Prisoninmates.com mail service. He states he has not received any incoming mail except money orders and legal materials that he would need to sign for. He states that he believes that interference with his mail is in retaliation for his having filed grievances. Id.

Plaintiff claims that his confinement at NBCI on administrative segregation constitutes an atypical hardship. He states that Lt. Thomas was responsible for his being housed on administrative segregation and Defendant White is responsible for his monthly case management review. Id.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club,

Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.   Assignment to Administrative Segregation

Plaintiff was transferred to NBCI on May 25, 2010.  On September 14, 2011, he was placed on administrative segregation status after Lt. Damon Thomas was informed by federal agents of the Alcohol, Tobacco and Firearms Agency (ATF) that Plaintiff was under investigation and there was a possibility that a federal indictment would be filed against him. ECF No. 18, Exs. 1 & 3.  In the Administrative Segregation Investigative Report Thomas noted:

> Dodd is a very high ranking Bloods gang member that is currently under investigation by the ATF for possible indictment.  As such, this inmate poses a risk to the security of the facility for his gang ties and the current climate of NBCI.

Id., Ex. 3.

On September 19, 2011, a case management team agreed with Thomas' recommendation and it was recommended Plaintiff be re-assigned from general population to administrative segregation pending the investigation.  Id., Ex. 5.  On September 21, 2011, Case Management Manager Rick Roderick concurred with the case management team's recommendation and the recommendation was approved by Assistant Warden Graham, Jr. on the same date.  Id.

Plaintiff received monthly case management reviews which indicated that the ATF investigation was ongoing as was an internal investigation into Plaintiff's danger to institutional security.  The reviews also noted Plaintiff's affiliation with a STG.  Id., Ex. 6.

In March 2012, Thomas was informed by the ATF that Plaintiff would not be indicted. Id., Ex. 3.  Thomas contacted NBCI's Case Management Department and requested Plaintiff's removal from administrative segregation.  The recommendation was approved by the case management team on March 27, 2012, and approved by Case Management Manager Rich

Roderick and Acting Assistant Warden Wade on March 30, 2012.  Id., Ex. 7 & 8.  Plaintiff was returned to general population on April 6, 2012.  Id., Exs. 1 & 2.

Plaintiff argues that the nature of his confinement on administrative segregation at NBCI was more restrictive than any other administrative segregation unit in the Division of Corrections.  In Wilkinson v. Austin, 545 U.S. 209 (2005), the Supreme Court examined the due process issue involving inmates confined at the Ohio State Penitentiary ("OSP"), a super-maximum security prison where almost all human contact was prohibited and communication between cells was forbidden, to determine whether a liberty interest was created in the isolated confinement and if so, what due process was to be afforded to the inmate so confined.  At the OSP, exercise was limited to one hour a day in a small indoor room and the inmates were exposed to light 24 hours per day.  Wilkinson recognized that the deprivations detailed in that case exist in most solitary confinement facilities and looked at the presence of added factors to find "an atypical and significant hardship" on inmates such that they had a liberty interest in avoiding it.  Id., at 224.  These factors were (1) the potentially indefinite length of detention, limited only by the length of the underlying sentence, and (2) being rendered ineligible for parole due to confinement.  Id.  The Supreme Court found that "while any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context," triggering a protected liberty interest in avoiding placement on such confinement.  Id.  In reviewing Wilkinson, it would appear that the Court instructed lower courts to consider the totality of circumstances in a given facility.  Id.

Applying the Supreme Court's rationale in Wilkinson, this Court found that a transfer to the Maryland Correctional Adjustment Center ("MCAC"), a super-maximum security facility, implicated procedural due process protections, and concluded that:

> In light of the prohibition of "almost all human contact," coupled with severe restrictions on movement or any type of activity, both of which may last for the duration of some inmates' underlying sentences, and may be less likely to be relieved by parole than the less arduous conditions at other facilities, the conditions at MCAC create such a hardship when judged against "any plausible baseline." Inmates thus have a protected liberty interest in avoiding transfer to MCAC.

Farmer v. Kavanaugh, 494 F. Supp. 2d 345, 358 (D. Md. 2007).

This Court later found that conditions of NBCI's Special Management Unit, an environment far more restrictive than the conditions described by Plaintiff on NBCI's administrative segregation unit, did not create an atypical hardship. See Ibrahim v. Rouse, Civil Action No. PJM-08-492 (D. Md. 2008). Plaintiff has not alleged, nor could he demonstrate, that his assignment to administrative segregation adversely affected his eligibility for parole.

The Wilkinson Court found that the process provided to Ohio inmates assigned to OSP complied with due process protections, noting that the Ohio inmates received written notice 48 hours in advance of a hearing "summarizing the conduct or offense triggering the review" and were provided a prepared form explaining why the review was initiated. Wilkinson, 545 U.S. at 216. The Ohio inmates were permitted to attend the hearing where they were allowed to offer "pertinent information, explanation and/or objections to OSP placement and may submit a written statement," but could not call witnesses. Id. In addition to the notice and hearing, the Ohio system included a review of the committee's decision by the warden, who was to provide reasons for an approval of an assignment, as well as an additional review by a Bureau which was vested with final decision-making authority over all inmate assignments in Ohio. Id. After these reviews were completed, the inmate was allowed 15 days to file objections with the Bureau and only after this 15-day period expired was the inmate transferred to the facility. Id. at 217.

Inmates who were transferred were given another review within 30 days of their arrival and, thereafter, were reviewed yearly.  Id.

> Three factors must be balanced to determine how much process is due:
>
>> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Wilkinson, 545 U.S. at 224-225, citing Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

Defendants have filed documentation concerning investigation of information concerning Plaintiff's alleged membership in a STG.  Plaintiff has been provided the materials in redacted form.  It is clear that correctional employees received information from numerous sources that Plaintiff is a high ranking member of a STG.  Moreover, he was the target of a Federal criminal investigation.  While Plaintiff claims that he was never placed on notice and was not given an opportunity to refute the allegations, his protest is belied by the record.

As a prisoner, Plaintiff is not entitled to the process due to persons who remain at liberty. "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Wilkinson, 545 U.S. at 225.  He is not entitled to an adversarial hearing, witnesses, evidence introduction, or other trappings of a full trial.

Plaintiff acknowledges that he was told he was being assigned to administrative segregation because he was believed to be a threat to the security of the institution.  The exigencies present explain why notice may not have been provided before Plaintiff was assigned

to administrative segregation. Expertise of prison officials in matters of security must be given due deference. See Sandin v. Conner, 515 U.S. 472, 482 (1995). Plaintiff's assignment to administrative segregation was supported by documentation of his involvement in activities threatening to the security of the institution and his being the target of a Federal criminal investigation. See ECF No. 18.

While the process afforded Plaintiff did not provide for as many levels of administrative review as provided to the inmates in Wilkinson, the reviews occurred monthly rather than annually. The undersigned finds that the process afforded to Plaintiff met with minimal constitutional standards.

B.   Prison File

"[I]n certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979). To establish the information was relied upon to a constitutionally significant degree this Court must consider both the nature of the adverse administrative decision made on the basis of the erroneous information and the nature of the false information. Id. If the erroneous information is relied upon to deny parole or diminution of confinement credits, a "conditional liberty interest is at stake and the due process clause is called into play." Id. "If the alleged error is a technical one which would not reasonably be a factor relied on in the decision-making process, then no claim for relief will lie." Id.

In the instant case, Plaintiff appears to claim that the allegedly erroneous information was relied upon to his detriment when he was assigned to administrative segregation. It is undisputed

that Plaintiff's request to review case information pertaining to anything related to his STG status was denied by Assistant Warden Graham, Jr., on November 15, 2011.  The request was denied because it was deemed to entail "potentially security sensitive [information]".  Id., Exs. 11 & 12.  Plaintiff's claim is unavailing.  First, the allegedly erroneous information, that Plaintiff is a high ranking member of a STG has not been disputed by Plaintiff.[1]  Additionally, Plaintiff was assigned to administrative segregation not simply due to the belief that he is a high ranking member of a STG but because he was the target of a Federal criminal investigation, a fact that Plaintiff does not dispute.  Secondly, the interest asserted, remaining in general population, is insufficient to invoke due process protections.  As Plaintiff has failed to establish that he suffered actual harm as a result of his inability to review any of the records requested, his claim is denied.

C.     Mail

Prisoners have a First Amendment right to send and receive mail.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).  In considering whether policies regarding mail are constitutionally valid, a distinction is drawn between incoming and outgoing mail; a lower level of scrutiny applies to policies regarding incoming mail.  Id. at 413.  Prohibition of incoming materials from publishers (see Thornburgh at 408) requires the showing of a greater, legitimate security interest than policies concerning other types of mail.  See Altizer v. Deeds, 191 F.3d 540, 548 (4th Cir. 1999) (inspection of outgoing mail serves legitimate penological purpose).  Likewise, policies concerning legal mail require heightened scrutiny, but isolated incidents of mishandling of mail do not state a claim.  See Smith v. Maschner, 899 F.2d 940, 944 (10th Cir.

---

[1] Plaintiff filed an ARP on January 5, 2012, complaining that he had been wrongly validated as a gang member.  In dismissing the ARP, Warden Shearin noted that Plaintiff was validated as a gang member on July 8, 2010.  He advised Plaintiff that it was reasonable to validate him as a gang member due to information obtained from reliable agency contacts, observed associations, contact with other known associates, cell searches, and confidential information compiled through investigation.  Id., Ex. 14.

1990) (requiring a showing of improper motive or interference with access to courts); Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (isolated incident of mishandling does not show actionable pattern or practice). Occasional incidents of delay or non-delivery of mail do not rise to a constitutional level. Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990). Kathy Jacobs, Office Processing Clerk Supervisor states that all incoming and outgoing mail that is received by NBCI mailroom is processed in accordance with approved DOC policies and directives. ECF No. 18, Ex. 9. Taking Plaintiff's allegations as true, that non-legal letters he mailed out were not received by their intended recipients and he did not receive copies of magazines to which he subscribed, his claim fails.[2] Absent any assertion by Plaintiff that he suffered an actual injury, his complaint simply does not state a claim upon which relief may be granted.

D.  Retaliation

Plaintiff claims that Defendants retaliated against him by interfering with his mail and otherwise harassing him because he filed grievances. ECF Nos. 1 & 6. In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); Pierce v.

---

[2] To the extent Plaintiff's claim regarding non-delivery of his magazines is construed as a property claim, Plaintiff is advised that in the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. See Parratt v. Taylor, 451 U. S. 527, 542-44 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy. See Juncker v. Tinney, 549 F.Supp. 574, 579 (D. Md. 1982).

King, 918 F.Supp. 932, 945 (E.D.N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. Perry v. Sindermann, 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

ACLU of Maryland, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993). As noted supra, Plaintiff has failed to show any adversity as a result of the alleged retaliatory conduct, i.e. he has failed to sufficiently demonstrate any impairment of a constitutionally-protected right.

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. See Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287, (1977); Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir.1999) (en banc). A retaliation claim has three elements: 1) the prisoner engaged in protected conduct; 2) an adverse action was taken against the prisoner that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, i.e., the prisoner's protected conduct motivated at least in part by the adverse action. See Thaddeus-X, 175 F.3d at 394.

Plaintiff offers nothing in support of his retaliation claim other than self-serving conclusory averments. There is nothing in the record to suggest that the conduct of Defendants was causally connected to Plaintiff having filed grievances. Plaintiff cannot prevail on this claim.

E.      Failure to comply with DCD

In his opposition to Defendants' dispositive motion, Plaintiff claims that Defendants failed to comply with Division of Correction Directives regarding the processing of mail and grievances. ECF No. 24. Additionally, Plaintiff claims that Defendants' failure to provide him with copies of DCD is in violation of procedure and policy. These claims fail. To the extent that written directives were not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. See Culbert v. Young, 834 F.2d 624, 628 (7th Cir. 1987).[3]

For the aforementioned reasons, the Defendants' Motion, construed as a Motion for Summary Judgment, shall be granted. A separate Order follows.

February 26, 2013                                              /s/
                                                      _____
                                                      George L. Russell, III
                                                      United State District Judge

---

[3] Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. See Myers v. Kelvenhagen, 97 F.3d 91, 94 (5th Cir. 1996).